STATE OF NORTH CAROLINA

GUILFORD COUNTY

**FILED**

2022 JUN 10 A 11:03

GUILFORD CO.. C S C

BY _____

THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
FILE NO. 22 CVS 5417

REVEREND DR. T. ANTHONY
SPEARMAN,

             **Plaintiff,**

      **v.**

DERRICK JOHNSON, LEON W. RUSSEL,
and   GLORIA   J.   SWEET-LOVE,
DEBORAH MAXWELL, GERALD GIVENS,
BARRETT BROWN, CORRINE MACK, and
SYLVIA BARNES

           **Defendants.**

**COMPLAINT**
**(JURY TRIAL DEMANDED)**

    ***WHEREAS*** [GOD] *"hates a lie, for a lie is a pitiable, degrading and dangerous thing"*; and,

    ***WHEREAS*** a lie is *"dangerous to a universe whose foundations are God's Truth"*; and,

    ***WHEREAS*** a lie is *"degrading to young growing characters which should be open, honest and sincere"*; and,

    ***WHEREAS*** a lie is *"pitiable for boys and girls…who ought to despise deception and deceit"*; and,

    ***WHEREAS*** we pray God *"Create in us that high sense of honor and self-respect which will suffer disgrace and punishment rather than stoop to a falsehood"*; and,

    ***WHEREAS*** we pray God *"Deliver us from tattlers, tale-bearers and liars,"* and,

    ***WHEREAS*** we pray God *"Teach us that silence may save us from such things but that a lie can never save a human soul from its own damnation and the world's disgust"*.

              *-W.E.B. Dubois, "Prayers for Dark People"*

REV. DR. T. ANTHONY SPEARMAN COMPLAINT V. DERRICK
JOHNSON ET. AL.

PAGE 1 OF 28

Case 1:22-cv-00561   Document 2   Filed 07/18/22   Page 1 of 27

NOW COMES REVEREND DOCTOR T. ANTHONY SPEARMAN (hereinafter, **"PLAINTIFF"**), by and through the undersigned counsel, complaining of the Defendants and says the following:

## OVERVIEW

Plaintiff brings suit against these several Defendants in their individual capacities for Defamation and for a Civil Conspiracy to have Plaintiff removed from the Office of President of the North Carolina NAACP. The Defendants conspired to have Plaintiff removed because of his support of a victim of sexual harassment who brought litigation against the National NAACP and an employee/member of the North Carolina State Conference NAACP and because of Plaintiff's growing national profile stemming from his many successful and high-profile activities on behalf of the People of North Carolina and the NC NAACP. To make removing Plaintiff more palatable, Defendants engaged in a sustained effort to defame Plaintiff by alleging without proof (and without giving Plaintiff a forum by which he could facially challenge the accusations) that Plaintiff, and those in close association with him, misappropriated association funds and engaged in conduct inimical to the Constitution and Bylaws of the National Association for the Advancement of Colored People. Defendants engaged in unlawful and unconstitutional acts to first defame and then to remove Plaintiff from office.

## THE PARTIES

1. Plaintiff is a resident and citizen of Greensboro, North Carolina, and at all times relevant to this litigation was working within the scope of his office as the duly elected President of the North Carolina Conference of the National Association for the Advancement of Colored People (hereinafter, **"NC NAACP"**). Plaintiff is a highly respected state leader in the religious community having served as President of the North Carolina Council of Churches.

2. Defendant Derrick Johnson (hereinafter, **"DEFENDANT JOHNSON"**), upon information and belief, is a resident and citizen of the State of Mississippi, is not incompetent, nor is he an active member of any branch of the United States Armed Services. At all times relevant to this litigation, Defendant Johnson acted outside the scope of his employment as the President and Chief Executive Officer

REV. DR. T. ANTHONY SPEARMAN COMPLAINT V. DERRICK JOHNSON ET. AL.

PAGE 2 OF 28

of the National NAACP (hereinafter, **"NATIONAL"**) as the
position is defined by National's Constitution and Bylaws.

3. Defendant Leon W. Russell (hereinafter, **"DEFENDANT
RUSSELL"**), upon information and belief, is a resident and
citizen of the State of Florida, is not incompetent, nor is
he an active member of any branch of the United States
Armed Services. At all times relevant to this litigation,
Defendant Russell acted outside the scope of his employment
as the Chair of the Board of Director for National as the
position is defined by National's Constitution and Bylaws.

4. Defendant Gloria J. Sweet-Love (hereinafter, **"DEFENDANT
SWEET-LOVE"**), upon information and belief, is a resident
and citizen of the State of Tennessee, is not incompetent,
nor is she an active member of any branch of the United
States Armed Services. At all times relevant to this
litigation, Defendant Sweet-Love acted outside the scope of
her employment as Chair of the Committee on Membership and
Units, and her appointment as Administrator over the NC
NAACP.

5. Defendant Deborah Maxwell (hereinafter, **"DEFENDANT
MAXWELL"**), upon information and belief, is a resident and
citizen of New Hanover County, North Carolina, is not
incompetent, nor is she an active member of any branch of
the United States Armed Services. At all relevant times to
this litigation, Defendant Maxwell acted outside the scope
of her membership as defined by National's Constitution and
Bylaws.

6. Defendant Gerald Givens (hereinafter, **"DEFENDANT GIVENS"**),
upon information and belief, is a resident and citizen of
Wake County, North Carolina , is not incompetent, nor is he
an active member of any branch of the United States Armed
Services. At all relevant times to this litigation,
Defendant Givens acted outside the scope of his membership
as defined by National's Constitution and Bylaws.

7. Defendant Barrett Brown (hereinafter, **"DEFENDANT BROWN"**),
upon information and belief, is a resident and citizen of
Wake County, North Carolina, is not incompetent, nor is he
an active member of any branch of the United States Armed
Services. At all relevant times to this litigation,
Defendant Brown acted outside the scope of his membership
as defined by National's Constitution and Bylaws.

8. Defendant Corrine Mack (hereinafter, **"DEFENDANT MACK"**), upon information and belief, is a resident and citizen of Mecklenburg County, North Carolina, is not incompetent, nor is she an active member of any branch of the United States Armed Services. At all relevant times to this litigation, Defendant Mack acted outside the scope of her membership as defined by National's Constitution and Bylaws.

9. Defendant Sylvia Barnes (hereinafter, **"DEFENDANT BARNES"**), upon information and belief, is a resident and citizen of Wayne County, North Carolina, is not incompetent, nor is she an active member of any branch of the United States Armed Services. At all relevant times to this litigation, Defendant Barnes acted outside the scope of her membership as defined by National's Constitution and Bylaws.

## JURISDICTION AND VENUE

10. Plaintiff brings this action pursuant to and under the common law of North Carolina for Libel Defamation, Slander Defamation and Civil Conspiracy.

11. This court has original jurisdiction over Plaintiff's state law claims under Chapter 7A of the North Carolina General Statutes.

12. Venue is proper in this county for the following reasons:

   a. Most of the acts given rise to the litigation occurred in this County, with the Defendants, at least two of them, actually traveling to the county to carry out some of the acts complained of.

   b. The Defendants caused the defamatory letter it drafted to be distributed and circulated to people in this county and throughout the State.

   c. For the duration of the Administratorship of the NC NAACP, the headquarters of the NC NAACP was based in this county.

13. The following facts alleged are based upon the personal knowledge of the Plaintiff except as to matters where the allegation is based upon information and belief.

REV. DR. T. ANTHONY SPEARMAN COMPLAINT V. DERRICK JOHNSON ET. AL.

PAGE 4 OF 28

Case 1:22-cv-00561   Document 2   Filed 07/18/22   Page 4 of 27

## FACTS

14.     The allegations contained in Paragraphs 1-8 are re-alleged and incorporated by reference as if fully setout herein.

15.     On or about May 4, 2017, Jazmyne Childs (hereinafter, **"MS. CHILDS"**) made a complaint to NC NAACP Personnel Chair Avi Lester and Attorney Al McSurely alleging sexual harassment and a hostile work environment against Curtis Gatewood (hereinafter, **"GATEWOOD"**).

16.     Gatewood was employed by the NC NAACP as the Interim Field Director.  In that capacity, he managed the affairs and staff of the NC NAACP.  As such, he was Ms. Child's supervisor, and indeed, the supervisor of the then-headquartered office in Durham.

17.     In or around June 2017, then NC NAACP President William J. Barber, II (hereinafter, **"BARBER"**) commissioned an independent investigation of Ms. Childs' allegations by an expert in the field of Sexual Harassment in the workplace, North Carolina Central University Law Professor, April Dawson (hereinafter, **"PROFESSOR DAWSON"**).  As part of her commission, Dawson was required to write a report detailing her findings (hereinafter, **"THE DAWSON REPORT"**). A copy of the Dawson Report is attached to this Complaint as Plaintiff's Exhibit 1, and is incorporate by reference as if fully setout herein.

18.     Soon after learning that the NC NAACP had launched an investigation into Ms. Childs' complaint, Mr. Gatewood resigned from his employed position with the NC NAACP.

19.     Professor Dawson concluded her investigation in late September, and submitted her report on October 2, 2017.

20.     The Dawson Report concluded that Gatewood had sexually harassed Ms. Childs on specific dates outlined in the report, and that Gatewood had created a hostile work environment.

21.     On October 17, 2017, Irving Joyner (hereinafter, **"MR. JOYNER"**), Legal Redress Chair for the NC NAACP sent an email to General Counsel for National, Bradford Berry

REV. DR. T. ANTHONY SPEARMAN COMPLAINT V. DERRICK JOHNSON ET. AL.

PAGE 5 OF 28

Case 1:22-cv-00561   Document 2   Filed 07/18/22   Page 5 of 27

(hereinafter, "**MR. BERRY**"). In the email, Mr. Joyner wrote "[o]n behalf of the NC NAACP and upon the suggestion of [National] President [Derrick] Johnson, I am forwarding [you] the attached investigative report regarding a sexual harassment complaint…In every respect, this matter has been kept confidential by our executives and is provided to you for any further action that should be taken and any guidance which you, as our national counsel, can provide…"

22.    Upon information and belief, Mr. Joyner communicated directly to both Defendant Johnson and Mr. Berry about suspending Gatewood's membership in the NAACP.  Under Article X Section 4 of the Bylaws for Units of the NAACP, the President and CEO of National can suspend any officer or unit member of any NAACP unit without a hearing, and pending an investigation and full hearing on the matter.

23.    Even though he had all the information from the independent investigation conducted by Professor Dawson, including the full version of the Dawson Report, Defendant Johnson declined to suspend Gatewood.

24.    Embolden by Defendant Johnson's refusal to suspend him, Gatewood began attending NC NAACP events known by him to also be attended by Ms. Childs.  In October 2017, Gatewood appeared at a rally at the Martin Street Baptist Church in Raleigh, North Carolina and at the NC NAACP State Convention that was also held in Raleigh.

25.    Ms. Childs was so frightened by Gatewood's presence and his incessant staring at her that she reported it to the security that was on the scene.

26.    At that same October 2017 State Conference Convention, Plaintiff was elected the new President of the NC NAACP.

27.    Ms. Childs reported the incidents that happened to her at the Church and at the State Convention to Plaintiff. Plaintiff immediately reported the matter to Mr. Berry.

28.    On or about December 7, 2017, Plaintiff wrote directly to Defendant Johnson asking Johnson to intervene to prevent an "unruly caucus" from challenging and reversing the work the Conference was engaged in and to take action in the Gatewood matter.  Upon information and belief, that caucus included Mr. Gatewood, Defendant Barrett Brown (the

President of the Alamance County Chapter of the NAACP), Defendant Givens (the President of the Raleigh/Apex Chapter of the NAACP), Defendant Mack (the President of the Charlotte Mecklenburg County Chapter of the NAACP), and Defendant Sylvia Barnes (Secretary of the NC State Conference of the NAACP), as well as other members who would later aid Defendants in unlawfully conspiring, and ultimately removing Plaintiff from office.

29.    National's General Counsel, Mr. Berry told Plaintiff to send a cease and desist letter to Gatewood prohibiting him from attending NC NAACP events.

30.    Plaintiff did mail the cease and desist letter to Gatewood, by certified mail, at his residence in Oxford, North Carolina; Gatewood received the cease and desist letter on or about December 26, 2017.

31.    In or around January 2018, Gatewood violated the cease and decease letter and appeared at the NAACP Winter Conference in Cary, North Carolina.

32.    Plaintiff informed Defendant Johnson and Mr. Berry; however, even after learning that Gatewood violated the cease and desist letter, and continued harassing Ms. Childs, Defendant Johnson took no action even though he had the unilateral power to do so.

33.    Fearing that Gatewood would continue to stalk and harass her, and that National and Defendant Johnson would not protect her from Gatewood, Ms. Childs resigned from the NC NAACP in August 2018.

34.    Gatewood began attending Alamance County NAACP Branch (hereinafter, **"ALAMANCE NAACP"**) meetings, and eventually began holding himself out as the President of the Alamance NAACP.  This was unusual because Mr. Gatewood did not live in Alamance County, and therefore, under the Bylaws of the NAACP, he could not serve as President of the Chapter.

35.    Gatewood was aided in this unconstitutional effort by Defendant Brown, who, upon information and belief, was an elected office holder in the Alamance County Chapter of the NAACP.

REV. DR. T. ANTHONY SPEARMAN COMPLAINT V. DERRICK JOHNSON ET. AL.

PAGE 7 OF 28

36.     Plaintiff wrote Defendants Johnson and Russell asking them to take action against Gatewood.

37.     It wasn't until months later, and after months of petitioning from the North Carolina State Conference, did Defendant Johnson take any action, and when he did finally act, reluctantly, he only suspended Gatewood in his capacity as President of the Alamance NAACP, not as a member of the NAACP itself.[1]

38.     Prior to his removal as President of the Alamance Chapter of the NAACP, Mr. Gatewood announced that he would challenge Plaintiff for President in the upcoming October 2019 State Conference elections, which would take place during the State Convention.  The two men were the only candidates vying for President of the NC NAACP in the upcoming elections slated for October 2019.

39.     On June 20, 2019, after learning five days earlier that Mr. Gatewood had filed to run for President of the NC NAACP, Ms. Childs sent Defendant Johnson a letter asking him to take prompt action to prevent Mr. Gatewood from becoming President of the NAACP.  Not only did Defendant Johnson fail to take any action against Mr. Gatewood, he didn't even reply to Ms. Childs' letter.

40.     On September 4, 2019, after failing to receive a response from her June 2019 letter, and because Mr. Gatewood continued to show up the NC NAACP events even though he had been ordered not to appear, Ms. Childs sent another letter to Defendant Johnson asking him to suspend Mr. Gatewood as a member of the NAACP on the basis of the findings in the Dawson Report.  Again, not only did Defendant Johnson not take any action against Mr. Gatewood, he chose not to reply to Ms. Childs' September 4, 2019 letter.

---

[1] Plaintiff later learned, and now asserts upon information and belief, that the reason Defendant Johnson refused to suspend Gatewood's membership in National- even though Gatewood had been credibly accused of sexual harassment, had unconstitutionally and fraudulent sought to take power in a Branch that he was ineligible to serve in, and had taking other actions inimical to the interest of the NAACP- was that Gatewood, with the knowledge and acquiescence of Defendant Johnson, would challenge Plaintiff (who as President of the NC State Conference had been cooperating with the Child's Sexual Harassment Investigation) for President of the North Carolina State Conference in the upcoming state elections in 2019 at the State Convention in October 2019.

REV. DR. T. ANTHONY SPEARMAN COMPLAINT V. DERRICK JOHNSON ET. AL.

PAGE 8 OF 28

41.    On September 11, 2019, Ms. Childs filed an Article X[2] Petition with National requesting that Defendant Johnson suspend Gatewood as a member of National.

42.    Neither Defendant Johnson nor Defendant Russell responded to Ms. Childs' Article X, an omission in violation of the NAACP Constitution and Bylaws.

43.    After receiving no response, and still in fear of continued harassment by Mr. Gatewood, Ms. Childs retained legal counsel, and on September 18, 2019, supported by "The Elder Women"[3] and other leaders of NC NAACP, she held a press conference, publically voicing for the first time what had happened to her and Defendants Johnson and Russell's failure to protect her.

44.    The public airing of her grievance coupled with the support of leaders- including Plaintiff- from the NC NAACP, angered Defendants.  When questioned by a reporter on Childs assertions and his failure to act, Defendant Johnson became visibly angry, and lashed out forcefully at the reporter.

45.    Under public pressure, on September 26, 2019, more than two years after receiving the Dawson Report, and numerous requests by Plaintiff and Ms. Childs to take action, and only after Ms. Childs made her allegations against Gatewood and National publically known, Defendant Johnson reluctantly suspended Mr. Gatewood as a member of the NAACP (at all levels).[4]

46.    Because only a NAACP member in good standing can run for elective office within the State Conference, Mr. Gatewood's suspension prohibited him from challenging Plaintiff in the upcoming October 2019 State elections, and practically ensured Plaintiff's re-election as President of the NC NAACP, and through him, the NC NAACP's support of and cooperation with Ms. Childs.

---

[2] Article X of the NAACP Bylaws outlines the process for expelling, suspending or removing officers and members of the NAACP and any of its Units.

[3] The Elder Women is a group of senior and lifetime members of National and the NC State Conference of the NAACP, organized to support and promote the efforts of female members of the NAACP.

[4] It should be noted that days after Defendant Johnson finally suspended Gatewood's membership, the Associated Press published a piece alleging that another woman, a volunteer in the 2014 NC NAACP Voter Energizing Program, claimed Gatewood had also sexually harassed her.

47.    Defendant Johnson's preferred candidate was no longer eligible to challenge Plaintiff, and there was no time to find a replacement candidate since the period for filing to run for President of the NC NAACP had closed.

48.    Surely Plaintiff would cruise to re-election and would serve an additional two-year term.

49.    As a result of Plaintiff's public support and the public support of other member-leaders of the NC NAACP for Ms. Childs, Defendants Johnson and Russell devised a plan to remove from leadership Plaintiff and other member-leaders of the NAACP.

50.    To do this, Defendants unconstitutionally place the NC NAACP under an administrator-ship, whereby Defendants Johnson and Russell, acting through their appointed Administrator, Defendant Sweet-Love, indefinitely postpone the required Constitutional elections (thus preventing Plaintiff from being re-elected), assumed control of the NC NAACP by preventing the State Conference from acting without the knowledge and consent of Defendant Sweet-Love, and damaged Plaintiff's reputation in the interim by lodging a number of allegations against Plaintiff including, but not limited to, financial misconduct on the part of Plaintiff. The purpose of Defendants' plan to damage Plaintiff's reputation was to ensure that once elections resumed, Plaintiff would have a difficult time being re-elected.

51.    Upon information and belief, as part of their plan, Defendants Johnson, Russell and Sweet-Love would announce that a number of Article X Complaints had been filed against Plaintiff and other members of the NC NAACP leadership team, and that as a result of the quantity of complaints, and the NC NAACP's inability to resolve disputes within the NC NAACP, National would by necessity need to take over the NC NAACP.

52.    Upon information and belief, Defendants would then call for elections in 2021, an election process that they would control, whereby they would cause their preferred candidate, Defendant Maxwell, to be elected; the new President, a woman, would cease providing documentation or other support to Ms. Childs.

REV. DR. T. ANTHONY SPEARMAN COMPLAINT V. DERRICK
JOHNSON ET. AL.

PAGE 10 OF 28

53.     To aid in their plan, Defendants Johnson, Russell and Sweet-Love sought and obtained the willing participation of Defendants Givens, Brown, Mack, Maxwell and Barnes, the individuals whom Plaintiff had identified earlier as members of the "unruly caucus".

54.     Upon information and belief, and after Defendant Johnson was forced to (and reluctantly did) suspend his preferred candidate Gatewood, Defendant Brown (who had assumed the role of President of the Alamance Chapter and was a friend and ally of Mr. Gatewood), Defendant Givens, and others travelled to National's Office in Baltimore to meet with Defendants Johnson and Russell.

55.     It was at this meeting that these Defendants devised a plan to interrupt the upcoming state elections slated to take place less than a week later at the October 2019 State Convention, and that the interruption would be used as a pretext to place the NC NAACP in the Administratorship.

56.     Defendants Mack, Barnes and Maxwell were included in the plan, and had knowledge that something would happen at the State Convention to help justify the Administratorship and the cancellation of the scheduled election.

57.     These Defendants began acting immediately to put their plan into action, taking steps in furtherance of their scheme to place the NC NAACP is the Administratorship, and to remove Plaintiff as President of the NC NAACP.

58.     On September 28, 2019, Defendant Brown caused a letter he authored to be sent to the members of the Alamance County Branch. In that letter, Brown requested Johnson to intervene in the sexual harassment investigation against Gatewood by suspending Plaintiff. Interestingly, and proof that Defendant Brown had secret and ongoing communications with Defendants Johnson and Russell, Brown wrote in his letter that the basis for the suspension should be two Article X's that had been filed against Plaintiff. At the time that Defendant Brown wrote his letter, Plaintiff didn't even know that two Article Xs had been filed against him, and such public knowledge of the existence of these alleged Article Xs without Plaintiff private knowledge that

REV. DR. T. ANTHONY SPEARMAN COMPLAINT V. DERRICK
JOHNSON ET. AL.

PAGE 11 OF 28

they even existed violated National's Constitution and
Bylaws.

59.     Defendant Brown also called on Defendants Johnson and
Russell "to perform an audit of the NC NAACP Conferences
finances", suggesting that Plaintiff had mismanaged and/or
misappropriated NC NAACP funds.  A copy of Defendant
Brown's September 28, 2019 Letter (hereinafter, "**BROWN
LETTER**") is attached to this Complaint as Plaintiff's
Exhibit 2, and is hereby incorporated by reference as if
fully setout herein.

60.     Upon information and belief Defendant Barnes aided in
the circulation of Defendant Brown's letter to individuals
and members outside the Alamance County NAACP Chapter.
Further upon information and belief, Barnes began secretly
sending state conference documents to Defendants Johnson
and Russell to be manipulated into conformity with their
conspiratorial narrative.

61.     Five days later, on Thursday, October 3, 2019, at the
start of the 2019 State Convention –which took place at
Winston-Salem, North Carolina- Defendants Barrett, Givens
and Mack caused a started a melee which soon became a near
physical altercation in which local law enforcement had to
be called.  Most troubling was the location at which these
Defendants decided to cause this melee: Emanuel Baptist
Church. A copy of the first-hand account of the events by a
member of the NC NAACP Security Team (who himself is a
former law enforcement officer) is attached to this
Complaint as Plaintiff's Exhibit 3, and is hereby
incorporated by reference as if fully setout herein.

62.     On Friday, October 4, 2019, Defendant Givens
communicated with Defendant Johnson, and gave Defendant
Johnson details of what the "unruly caucus" had done on
Johnson's behalf.[5]

_____

[5] *Defendant Givens penned a letter to members of the Raleigh-Apex NAACP Branch on October 8, 2019 in which he
told them that, based on his conversations with Defendants Johnson and Russell, "President Spearman [would]
remain in office but [would] no longer have any powers...[T]here will be no elections for NAACP state conference
[sic] until further notice."  Neither Plaintiff, nor other members of the NC NAACP, knew this information, nor had it
been shared with them by Defendant's Johnson or Russell. A copy of Givens October 8, 2019 Letter (hereinafter,
"GIVENS' LETTER") is attached to this Complaint as Plaintiff's Exhibit 4, and is hereby incorporated by reference
as if fully set out herein.*

63.     Defendant Johnson personally came to North Carolina on October 5, 2019 and informed the NC NAACP that it would be placed in an Administrator-ship on account of the "flurry of Article X Complaints" that had been filed against Plaintiff, other members of the NC NAACP, and the NC NAACP itself alleging misappropriation of funds and other conduct inimical to the best interest of the NAACP. During that same address, he publically scolded and rebuked Ms. Childs for going to the press and for not handling the matter discretely within the NAACP.

64.     Two weeks after announcing in person at the State Convention meeting that the NC NAACP would be placed in an Administrator-ship and scolding Ms. Childs for publically asserting that she was the victim of sexual harassment, Defendants Johnson and Russell sent a letter to Plaintiff formally giving notice to the NC NAACP that it was in Administrator-ship.

65.     Defendants Johnson and Russell caused Defendant Sweet-Love to be appointed Administrator. Even the appointment of Defendant Sweet-Love to this role was problematic and probably unconstitutional. At the time of her appointment, Defendant Sweet-Love was the President of the Tennessee State Conference of the NAACP. Putting a contemporary from a bordering state in charge of the NC NAACP did not comply with the historical customs of National.

66.     Under the terms of an Administrator-ship, as explained by Defendant Sweet-Love, any actions taken, or sought to be taken, by the State Conference had to have had prior clearance with Defendant Sweet-Love (and by extension Defendants Johnson and Russell who appointed her) for any action it sought to take. Simply put, Plaintiff would no longer lead the State Conference, and the State Conference would no longer have any autonomy to function in accordance to the desire of its members.

67.     Defendant Sweet-Love immediately sought to take control of the NC NAACP. She contacted Plaintiff and ordered him to call a meeting of the State Conference where she would notify the State Conference that it had been placed in the Administrator-ship.

REV. DR. T. ANTHONY SPEARMAN COMPLAINT V. DERRICK JOHNSON ET. AL.

PAGE 13 OF 28

68.    Plaintiff questioned the "out-the-blue" nature of the Administrator-ship, and demanded to know the basis for the same.

69.    He further demanded that any actions of National proceed in accordance with the Constitution and Bylaws of the NAACP, specifically that the Article X Complaints alleged to be the basis of the Administrator-ship be sent to the NC NAACP for review. A copy of Article X of the NAACP Constitution and Bylaws is attached to this Complaint as Plaintiff's Exhibit 5, and is hereby incorporated by reference as if fully setout herein.

70.    Article X of the NAACP Constitution and Bylaws requires the following process:

   a. A complaint against an officer or member of a Branch of the NAACP must be signed by at least 20 members of the affected branch and forwarded to the National Office and to the attention of the President and CEO as well as State/State-Area Conference.

   b. Upon receipt of the Complaint by certified or regular mail, the National Office "*shall forward a copy of the complaint by mail to the officer or member against whom it had been filed at the officers or member's correct address of record within ten (10) calendar days of receipt of the complaint*" (*Emphasis Added*).

   c. Upon receipt of the Complaint and respondent's written response, National Staff, "*shall conduct an investigation, render determinations and make recommendations and findings regarding the complaint, when no hearing is requested by the respondent within ninety (90) calendar days of the respondent's written response*". (*Emphasis Added*).  "The National staff shall prepare a record which includes all documentary matters submitted to it.

   d. When a hearing is requested by the respondent, the National Office through the President and CEO or his designee, "*shall cause a hearing to be held by a panel of three members of the Board of Directors*" (*Emphasis Added*), said members to be appointed by the Chairperson of the Board's Committee on Membership and Units.

e. The hearing panel "*shall convene with sixty (60) calendar days, of the receipt of the Complaint or a soon as possible thereafter, and conduct a hearing according to the hearing procedure*" outlined in Article X.

71.     Neither Defendants Johnson, Russell or Sweet-Love, nor anyone else from National's General Counsel's office ever sent any Article X Complaint to Plaintiff or to the NC NAACP.

72.     Instead, Defendants drafted and dispersed letters throughout various NAACP units alluding to what the phantom Article X Complaints alleged.  In one such letter, dated February 18, 2021 (hereinafter, "**SWEET-LOVE 2-18-21 LETTER**"), Defendant Sweet-Love suggested that the phantom Article X Complaints contained allegations of misappropriation of funds, allegations that if true would be criminal in nature and considered a crime of moral turpitude.

73.     But that same letter showed what really motivated Defendants to defame Plaintiff and conspire to remove him from office.  Sweet-Love asserted in the February 18, 2021 letter that by taking a stand against sexual harassment in the workplace, and by publically supporting the victim of the sexual harassment, Plaintiff, and the NC Conference which he led, engaged in conduct inimical to the Constitution and Bylaws of National.

74.     It was for this main reason, coupled with the false and defamatory allegation of misappropriation of funds that the Defendants, and all of them, conspired to place the NC NAACP in Administrator-ship and remove Plaintiff from office.

75.     Plaintiff was shocked and hurt that the Defendants would allege these defamatory accusations against him, especially the allegation that Plaintiff had misappropriated funds and that he was engaged in conduct inimical to the Constitution and Bylaws of the NAACP.

76.     Under Plaintiff's leadership, the NC NAACP had accomplished many victories on behalf of its members and the African-American Community in general.

77.     On February 22, 2019, the NC NAACP prevailed in a legal challenge to the North Carolina's Voter ID Law and a law that would cap the effective tax rate in North Carolina.

78.     Partnering with Appalachian voices, MountainTrue, The Catawba Riverkeeper Foundation, Waterkeeper Alliance, Sierra Club, Roanoke River Basin Association, the Cape Fear River Watch, and the Neuse River Foundation/Sound Rivers, the NC NAACP caused the State to announce that it would order Duke Energy to clean up coal ash at six North Carolina sites.  It would be the largest coal ash cleanup to date in American history.

79.     On August 22, 2019 after working with the Second Chance Alliance, the NC NAACP helped secure the release of Dontae Sharp who had been wrongfully convicted of a crime that he did not commit, and who had already spent twenty-six (26) years in prison.

80.     In the same month, the NC NAACP conference working with the Poor People's Campaign and immigration activist, helped defeat HB370, a bill targeted at illegally expanding the powers of Immigration and Customs Enforcement.

81.     In December 2019, months before the important 2020 primary elections, The U.S. District Court for the Middle District of North Carolina granted the NC NAACP's motion for preliminary injunction blocking the implementation of the Voter ID Law.

82.     In June and July of 2020, the NC NAACP, under Plaintiff's leadership, prevailed in a lawsuit challenging the unsafe and egregious conditions in the prisons created by COVID-19.  The State Conference's suit led a North Carolina Court to order statewide testing in the prisons, detailed changes to the conditions in the prisons including mask distribution, halts to unnecessary transfers, ongoing monitoring, and an early release regime for some inmates.

83.     In November 2019, the NC NAACP, under Plaintiff's leadership, filed suit in Wake County Superior Court seeking to restore the voting rights of ex-felons who had not regained their right to vote.

REV. DR. T. ANTHONY SPEARMAN COMPLAINT V. DERRICK JOHNSON ET. AL.

PAGE 16 OF 28

Case 1:22-cv-00561   Document 2   Filed 07/18/22   Page 16 of 27

84.     In August 2020, the NC NAACP helped win the release of Ronnie Long, a black man who had been wrongfully convicted by an all-white jury for a crime that he did not commit.

85.     In the same month, the NC NAACP helped persuade a federal judge to block the Alamance County Sherriff from prohibiting protests near a Confederate monument.

86.     Given all these good and righteous works done under the leadership of Plaintiff, he could not believe Defendants were accusing him of criminal acts and other conduct inimical to the Constitution and Bylaws of the NAACP.

87.     Defendants, through their agents who acted upon Defendants' requests, spread those vicious lies about Plaintiff throughout the State, both orally and in written form; interestingly, Defendants never delivered any Article X Complaint to Plaintiff, and never afforded Plaintiff an opportunity to be heard.

88.     Plaintiff and a number of NC NAACP members wrote Defendant Johnson numerous times requesting the Article X Complaints be served upon the conference, and the individual respondents.

89.     In a letter dated March 18, 2020, and a follow-up letter dated June 18, 2020 requesting the Article X Complaints, Plaintiff and the signatories to the letter requested Defendant Johnson give the NC NAACP guidance and clarification on the Administrator-ship process, and on the role of the Administrator during this process.

90.     Neither Defendant Johnson nor Defendant Russell responded to the State Conference's requests.

91.     Ultimately after not receiving the Article X Complaints and being afforded an opportunity to be heard as is required by the NAACP Constitution and Bylaws, on or about December 30, 2020, Plaintiff, in his capacity as President of the NC NAACP, formally requested that the State Conference be removed from Administrator-ship.

92.     Defendants' conspiracy to remove Plaintiff from office by defaming him took off with increased momentum and

REV. DR. T. ANTHONY SPEARMAN COMPLAINT V. DERRICK JOHNSON ET. AL.

PAGE 17 OF 28

urgency after Plaintiff requested the NC NAACP be removed from Administrator-ship.

93.     Defendant Sweet-Love, upon information and belief, and at the behest of Defendants Johnson and Russell responded to the NC NAACP's request. In her February 18, 2021 response letter, Defendant Sweet-Love again asserted without evidence that several Article X Complaints had been filed against Plaintiff and State Conference Past President Barber. She wrote that the State Conference had been placed in Administrator-ship for standing in solidarity with sexual harassment victim Childs, and act deemed to be inimical to the Constitution and Bylaws of the NAACP.

94.     She also alleged that members of the NC NAACP called, texted and emailed her to warn her about her safety, suggesting that Plaintiff, or someone on his behalf, had threatened her bodily harm if she came to North Carolina.

95.     Although the letter acknowledge that it had been copied to just the other Administrator, Hazel Dukes, this defamatory information, upon information and belief, was shared with Plaintiff's adversaries and contemporaries in the State Conference. A copy of the Sweet-Love 2-18-21 Letter is attached to this Complaint as Plaintiff's Exhibit 6 and is incorporated by reference as if fully setout herein.

96.     Upon information and belief, would be challengers to Plaintiff's State Conference leadership, including Defendant Johnson's new preferred candidate: Defendant Maxwell, began organizing at the behest of Defendants Johnson and Russell.

97.     Defendants increased their efforts to accuse Plaintiff of the criminal act of misappropriating association funds. In a letter dated March 4, 2021, Interim General Counsel Janette Wallace (hereinafter, **"MS. WALLACE"**), acting at the behest of Defendants Johnson and Russell, demanded Plaintiff produce more than seven years of bank statements, monthly financial statements, annual financial reports, and State Conference statements regarding stipends, honorarium, staff salaries, employment contracts, contractors and consultants. Upon information and belief, Defendants already had this information, or had access to this information, before sending out this letter full of

criminality innuendo. Ms. Wallace's Match 5, 2021 Letter is attached to this Complaint as Plaintiff's Exhibit 7, and is incorporated by reference as if fully setout herein.

98.     After they were satisfied that their plan had successfully divided the NC NAACP, and that accusations lodged against Plaintiff had reached critical mass, Defendants notified Plaintiff that National would conduct an election for State Conference offices. Not only did National usurp the NC NAACP's right to carry out its own election, Defendants withheld material information about the election including, but not limited to, when the election would take place, the duration of the election, and the method by which the election would be held.

99.     At the behest of Defendants Johnson and Russell, Defendant Sweet-Love conducted the election in violation of the NAACP Constitution. Defendants engaged in tactics designed to disenfranchise Plaintiff's supporters. Such tactics included failing to make delegate information accessible to all candidates, unconstitutionally throwing out the results of the first election in favor of a second election that Defendants carried out after a large number of delegates- most of whom were Plaintiff's supporters- had already left the convention.

100.    The elections were held virtually by electronic means, and balloting was done by an accessory software called ElectionBuddy. Defendants employed a computerized voting program to conduct the election without ensuring the programs compliance with Constitutional rules which stated that elections were to be done by secret ballot.

101.    Plaintiff received less votes than Defendant Maxwell, who herself garnered less than a majority of the voting delegates even though she had been given every advantage by Defendants Johnson, Russell and Sweet-Love, including delegate information which had been denied to other candidates including Plaintiff.

102.    Plaintiff, and others, timely challenged the election pursuant to Article IX of the NAACP Constitution and Bylaws.

103.    Defendants did not allow Plaintiff (or any other person) a hearing on the election challenges.

104.    On or about December 18, 2021, Bertrand A. A. Bonnick, DDS, MAGD, AFAAID, DDOCS, the High Point 5405-B Branch Parliamentarian issued a Parliamentary Opinion (hereinafter, "**BONNICK OPINION**") agreeing with Plaintiff that the October 2021 election did not comply with Constitutional rules or Robert's Rules of Order for the adoption of new rules concerning electronic voting.

105.    Most importantly, he concluded that the process for determining the viability of the challenge had not gone through all the stages required by the NAACP Constitutional, which meant that under the Constitution, Plaintiff was still the duly elected President of the State Conference, pending a determination by the appropriate full body.  A copy of the Bonnick Opinion is attached to this Complaint as Plaintiff's Exhibit 8, and is hereby incorporated by reference as if fully setout herein.

106.    Believing that the Constitution required him to remain in leadership pending a resolution of the election challenge, Plaintiff continued to function as the duly elected President of the NC NAACP.  A large number of NC NAACP members and leaders, including a group called the North Carolina Justice Coalition, continued to recognize Plaintiff as the duly elected President of the NC NAACP.

107.    As the final act in furtherance of Defendants' conspiracy to defame and remove Plaintiff from office, Defendant Johnson, in concert with Defendant Russell, sent a letter dated February 7, 2022 to numerous individuals in North Carolina, including Defendants Givens, Brown, Mack, Maxwell and Barnes (but excluding Plaintiff), purporting to immediately suspend Plaintiff's membership in the NAACP (hereinafter, "**SUSPENSION LETTER**").  A copy of the Suspension Letter is attached to the Complaint as Plaintiff's Exhibit 9, and is hereby incorporated by reference as if fully setout herein.

108.    In the suspension letter, Defendant Johnson accused Plaintiff of causing irreparable harm to the NAACP. Because the NAACP is seen as the oldest civil rights organization protecting the rights of minorities, alleging that a black leader is causing irreparable harm to the organization would cause that leader to be ridiculed in the minority community, and would subject the leader to contempt and

disgrace. It would also tend to impeach him within the civil rights organization community, which is the leader's trade and profession.

109.   Defendant Johnson's suspension letter subjected Plaintiff, and continues to subject Plaintiff, to ridicule, contempt and disgrace.

110.   Defendant Johnson's suspension letter tended to impeach Plaintiff within his trade and profession.

## FIRST CLAIM FOR RELIEF AGAINST ALL DEFENDANTS: DEFAMATION: SLANDER *PER SE*

111.   The allegations contained in Paragraphs 1-10 are re-alleged and incorporated by reference as if fully setout herein.

112.   Although Plaintiff was elected President of the NC NAACP, Plaintiff is not a public figure as the phrase is defined by applicable case law.  Elections of State Conference office holders are not open to the public, and both National and the NC NAACP are membership only associations.[6]

113.   Defendant Johnson defamed Plaintiff by slandering him [Plaintiff] at the October 5, 2019 meeting when he alleged to those gathered at the Convention that Plaintiff had misappropriated association funds.

114.   Misappropriating association funds is an infamous crime, and thus constitutes slander *per se*.

115.   Defendant Johnson defamed Plaintiff by slandering him at the October 5, 2019 meeting when Defendant alleged Plaintiff was acting in way inimical to the best interest of the NC NAACP.

116.   Alleging that a civil rights leader was acting in ways inimical to the interest of the country's oldest civil

---

[6] Even if Plaintiff was determined to be a public figure, Plaintiff is still entitled to recover because the Defendants' defamatory statements were made with actual malice. Defendants at all times had access to all records of the NC NAACP and did not have any basis to accuse Plaintiff of misappropriating funds. As evidence that the Defendants knew Plaintiff had not misappropriated funds, consider the fact that Defendants have never produced a single Article X Complaint to Plaintiff as is required by Article X of the NAACP Constitution and Bylaws.

REV. DR. T. ANTHONY SPEARMAN COMPLAINT V. DERRICK JOHNSON ET. AL.

PAGE 21 OF 28

rights organization tended to impeach Plaintiff in his profession as a civil rights leader, and thus constitutes slander *per se*.

117.  Upon information and belief, Defendant Russell engaged in the same slanderous activities as Defendant Johnson, communicating with a number of individuals in North Carolina the same accusations that Defendant Johnson made at the 2019 Convention.

118.  Upon information and belief, Defendant Sweet-Love engaged in the same slanderous activities as Defendants Johnson and Russell, communicating with a number of individuals in North Carolina the same accusations that Defendant Johnson made at the Convention. Defendant Sweet-Love made those comments at a number of public appearances she made, including the February 29, 2020 meeting, and a number of private phone calls and emails with people in the State that participated in the conspiracy to remove Plaintiff.

119.  All of the statements were false.

120.  None of the statements were of public concern because they were design to cause members of the organization to act against Plaintiff, and were acts done in furtherance of Defendants' civil conspiracy against Plaintiff.

121.  Although injury is presumed, Plaintiff was actually injured in that the slander caused and contributed to Plaintiff's apparent, though unconstitutionally caused, loss of office. Plaintiff was also suspended from membership in the NC NAACP, a membership that he has had for more than 40 years.

122.  Plaintiff is entitle to damages for the actual harm suffered as a result of Defendants defamatory actions, such actual harm damages to include impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering. Plaintiff is also entitled to presumed damages for mental pain and suffering, inconvenience, and loss of enjoyment.

123.  Plaintiff seeks judgment against Defendants, and all of them, in an amount in excess of $25,000.00.

REV. DR. T. ANTHONY SPEARMAN COMPLAINT V. DERRICK
JOHNSON ET. AL.

PAGE 22 OF 28

Case 1:22-cv-00561   Document 2   Filed 07/18/22   Page 22 of 27

## SECOND CLAIM FOR RELIEF AGAINST ALL DEFENDANTS:
## DEFAMATION: LIBEL *PER SE*

124. The allegations contained in Paragraphs 1-123 are re-alleged and incorporated by reference as if fully setout herein.

125. Defendant Sweet-Love's February 18, 2021 letter to Plaintiff defamed Plaintiff by alleging Plaintiff misappropriate funds of the association.

126. Defendant Sweet-Love's defamatory February 18, 2021 letter was ratified by Defendants Johnson and Russell.

127. Misappropriating association funds is an infamous crime, and thus constitutes libel *per se.*

128. Defendant Johnson's February 7, 2022 letter to Plaintiff defamed Plaintiff by alleging Plaintiff stole, converted and/or was otherwise refused to turn over state conference property.

129. Stealing, conversion and/or any unlawful taking is an infamous crime, and thus constitutes libel per se.

130. Defendant Johnson's defamatory February 7, 2022 letter was ratified by Defendant Russell.

131. Defendant Brown's September 28, 2019 Letter defamed Plaintiff by suggesting that Plaintiff had engaged in the misappropriation of funds and was trying to hide such illegal acts by having Curtis Gatewood suspended from membership within the NAACP.

132. All of the statements contained in each writing were false.

133. None of the statements were of public concern because they were design to cause members of the organization to act against Plaintiff, and were acts done in furtherance of Defendants' civil conspiracy against Plaintiff.

134. Although injury is presumed, Plaintiff was actually injured in that the libel caused and contributed to Plaintiff's apparent, though unconstitutionally caused,

Case 1:22-cv-00561   Document 2   Filed 07/18/22   Page 23 of 27

loss of office. Plaintiff was also suspended from membership in the NC NAACP, a membership that he has had for more than 40 years.

135. Plaintiff is entitle to damages for the actual harm suffered as a result of Defendants defamatory actions, such actual harm damages to include impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering. Plaintiff is also entitled to presumed damages for mental pain and suffering, inconvenience, and loss of enjoyment.

136. Plaintiff seeks judgment against Defendants, and all of them, in an amount in excess of $25,000.00.

## THIRD CLAIM FOR RELIEF AGAINST ALL DEFENDANTS: DEFAMATION: LIBEL *PER QUOD*

137. The allegations contained in Paragraphs 1-136 are re-alleged and incorporated by reference as if fully setout herein.

138. The March 5, 2021 letter sent to Plaintiff constitutes libel pro quod in that when it is read together with the other letters written by Defendants, and considered together with the innuendo portrayed by Defendants, it suggested Plaintiff has committed an infamous crime. It also held Plaintiff up to contempt and ridicule.

139. The Brown Letter sent to members of the Alamance County Branch, Defendants Johnson and Russell, and shared statewide with the aid of Defendant Barnes, constitutes libel pro quod in that when it is read in context of the civil conspiracy perpetrated by Defendants, and considered together with the innuendo portrayed by Defendants, it suggested Plaintiff had committed an infamous crime. It also held Plaintiff up to contempt and ridicule.

140. The March 5, 2021 letter was ratified by all three Defendants, and used by each of them in subsequent defamatory publications.

141. Defendants defamed Plaintiff with actual malice, and in substantial disregard of Plaintiff's rights.

REV. DR. T. ANTHONY SPEARMAN COMPLAINT V. DERRICK JOHNSON ET. AL.

PAGE 24 OF 28

142. Plaintiff was actually damaged.

143. Plaintiff is entitle to damages for the actual harm suffered as a result of Defendants defamatory actions, such actual harm damages to include impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering. Plaintiff is also entitled to presumed damages for mental pain and suffering, inconvenience, and loss of enjoyment.

144. Plaintiff seeks judgment against Defendants, and all of them, in an amount in excess of $25,000.00.

### FOURTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS: CIVIL CONSPIRACY

145. The allegations contained in Paragraphs 1-144 are re-alleged and incorporated by reference as if fully setout herein.

146. The Defendants, and each of them, conspired to defame Plaintiff and have him removed as President of the NC NAACP.

147. Defendants agreed both to do an unlawful act and to do a lawful act in an unlawful way.

148. Any act done in contravention of the NAACP Constitution and Bylaws are by definition unlawful.

149. Defendants conspired unlawfully to have Plaintiff removed from office by defaming him.

150. Defendants conspired against Plaintiff to remove him from office by conducting the lawful act of electing the President in an unlawful way.

151. Defendants, and each of them, committed various acts in furtherance of the conspiracy.

152. As a result of Defendants' civil conspiracy, Plaintiff has been damaged in an amount in excess of $25,000.00.

REV. DR. T. ANTHONY SPEARMAN COMPLAINT V. DERRICK JOHNSON ET. AL.

PAGE 25 OF 28

Case 1:22-cv-00561   Document 2   Filed 07/18/22   Page 25 of 27

## FIFTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS:
## PUNATIVE DAMAGES

153.    The allegations in Paragraphs 1-152 are re-alleged and incorporated by reference as if fully setout herein.

154.    Defendants are liable to Plaintiff for compensatory damages stemming from their defamation of Plaintiff, and their Civil Conspiracy to deprive Plaintiff of his office.

155.    Defendants' actions were done with malice toward Plaintiff.

156.    Defendants' actions were willful and wanton, and done in reckless disregard of the rights of Plaintiff.

157.    Plaintiff is entitled to recover punitive damages in an amount in excess of $25,000.00.

**WHEREFORE,** Plaintiff respectfully prays the Court as follows:

1. To accept this verified Complaint on behalf of the Plaintiff as an affirmation of the facts and assertions made therein; and

2. To require all factual matters to be tried before a Jury; and,

3. That the Plaintiff have and recover judgment against Defendants, and all of them, in the first cause of action in an amount in excess of $25,000 in compensatory damages; and,

4. That the Plaintiff have and recover judgment against Defendants, and all of them, in the second cause of action in an amount in excess of $25,000 in compensatory damages; and,

5. That the Plaintiff have and recover judgment against Defendants, and all of them, in the third cause of action in an amount in excess of $25,000 in compensatory damages; and,

REV. DR. T. ANTHONY SPEARMAN COMPLAINT V. DERRICK JOHNSON ET. AL.

PAGE 26 OF 28

6. That the Plaintiff have and recover judgment against Defendants, and all of them, in the fourth cause of action in an amount in excess of $25,000 in compensatory damages; and,

7. That the Court impose punitive damages against the Defendants; and,

8. That the cost of the action be taxed against Defendants; and,

9. That the Plaintiff recover pre-judgment interest against all the Defendants; and,

10. For such other further relief as the Court may seem just and proper.

This the 9th day of May, 2022.

**CUMMINGS LEGAL GROUP**

**/S/ Mark T. Cummings**

By: _____

MARK T. CUMMINGS
*Attorney for Plaintiff*
N.C. Bar #36702
241 Summit Ave.
Greensboro, NC 27401
(336) 574-0368

REV. DR. T. ANTHONY SPEARMAN COMPLAINT V. DERRICK JOHNSON ET. AL.

PAGE 27 OF 28